**UNITED STATES v. KRAKOWITZ et al.**

**SAME v. KRAKOWITZ.**

**Cr. Nos. 4843, 4842.**

District Court, S. D. Ohio, E. D.

Oct. 16, 1943.

Gerald L. Wallace, Sp. Asst. to Atty. Gen., Calvin Crawford, Dist. Atty., of Dayton, Ohio, and Ray O'Donnell, Asst. Dist. Atty., of Columbus, Ohio, for the Government.

Stanley Schwartz, of Columbus, Ohio, for defendants.

UNDERWOOD, District Judge.

These cases, No. 4843 Criminal, The United States of America v. Jacob Krakowitz and Martin Rosenthal; and No. 4842 Criminal, The United States of America v. Jacob Krakowitz, are considered together for present purposes. The same question as to each has been presented and is now before the Court for determination. The question, broadly stated, is as to the entry of a nolle prosequi as to certain counts of the indictments.

This question the brief for the Government has stated as follows: "The question of law presented for consideration is whether the Attorney General has the absolute power after indictment and before trial to enter a nolle prosequi of an indictment."

In the opinion of this court, this is not the question for determination. During the hearing of these cases on certain preliminary matters, June 14, 1943, Mr. Gerald L. Wallace, Special Assistant to the Attorney General, placed the question before the Court in the following language:

"I should make it clear at this time, however, that it is the desire of the Government at this time to move for a dismissal of the individual indictment against Krakowitz and the first count of the corporate indictment, the defendants having already in accordance with the proposal which has

since been acted upon by the Attorney General entered their pleas to the second count of the corporate indictment."

"The Court: You are moving for a nolle prosequi on those counts?"

"Mr. Wallace: On count 1 of the corporation."

"The Court: That is No. 4843, which has two counts?"

"Mr. Wallace: The first count of that indictment and also the indictment which charges Krakowitz individually."

Therefore, this Court is of the opinion that the question now before the Court for determination is not that of the absolute power of the Attorney General *to enter a nolle prosequi;* but it is upon the motion of the Government addressed to the Court wherein *the Court* is moved to enter a nolle prosequi. The pending question may therefore be phrased: "Should this Court sustain the motion of the Attorney General for a nolle prosequi in said cases?" As presented by the brief of the Government, the question is as to the absolute power of the Attorney General to enter a nolle prosequi, regardless of the views of the Court. The Court is not called upon to pass upon that question, but to determine whether it should lend its sanction to the proposed abandonment of the charges by sustaining a motion addressed to it, wherein the Court is moved to enter the nolle prosequi. This view is substantiated by the record:

"The Court: * * * if you desire to nolle without the approval of the Court you may do so."

"Mr. Wallace: I have no such desire."

This being the situation, the Court proposes to consider the facts and circumstances, which in the opinion of the Court should be determinative of the question here presented. These will be considered in the following order: The indictments; the history of the cases before this Court; and the facts and circumstances revealed to the Court in the statements of the Government Agents and counsel for the Government, insofar as they have bearing upon the question.

As to the indictments, all counts contained in them are based upon 26 U.S.C.A. Int.Rev.Code, § 145(b). In Case No. 4842, Jacob Krakowitz is charged with willfully attempting to defeat and evade his individual income taxes for the calendar year of 1937. There is but one count in this indictment. In Case No. 4843, the indictment contains two counts. The first charges that the defendants Krakowitz and Rosenthal attempted to defeat and evade the income and excess profits taxes for the K. & R. Iron and Metal Company, a corporation, for the calendar year of 1936. The second count charges that the defendants attempted to defeat and evade the income and excess profits taxes of the corporation for the calendar year of 1937.

It is easily discernible that three separate crimes are charged: (1) The evasion by Krakowitz of his own taxes for the year 1937; (2) the evasion by Krakowitz and Rosenthal of the corporate taxes for 1936; and (3) the evasion by Krakowitz and Rosenthal of the corporate taxes for 1937. These crimes have no connection with each other except in that they do show a continued systematic scheme to defeat and evade taxes.

The defendants having both pleaded guilty to the second count of the indictment in Case No. 4843 wherein they are charged with evasion of the corporate taxes for 1937, the Government has moved the Court to enter a nolle prosequi as to the first count of the same indictment in which both defendants are charged with evading corporate taxes for 1936, and the single count of the indictment in Case No. 4842 in which Krakowitz is charged with evasion of his own taxes for 1937. This is the motion before the Court.

The history of the cases before the Court may be briefly summarized as follows:

The defendants were indicted March 8, 1943; the defendants were arraigned March 12, 1943, entered their pleas of not guilty, and were released on bond. At that time it was agreed that the defendants, within two weeks from date, would advise the Government and the Court if they expected to stand trial.

On March 25, 1943, the defendants again appeared in open court and withdrawing their pleas of not guilty, tendered pleas of nolo contendere, which the Government announced it would oppose. Briefs were filed and the aggravating facts and circumstances were cited by the Government which, it was contended, should cause the Court to reject the pleas, and the Court so found.

The defendants were again in Court on April 27, 1943, and were then and there

advised that their pleas of nolo contendere were rejected by the Court. The attorney for the defendants requested two weeks within which to notify the District Attorney as to whether the defendants would stand trial or plead guilty, further stating: "If I am retained in the case, the case will result in a plea of guilty being entered. If not—" Whereupon the Court, at the request of the Government, granted the defendants one week within which to advise the District Attorney as to their intention with regard to standing trial.

The defendants again appeared in Court, June 2, 1943, stating that they had signed an offer to plead guilty to count two of the joint indictment, and that the offer was then in the hands of the Attorney General. A request from Mr. Gerald L. Wallace, Special Assistant to the Attorney General, that the matter be continued to June 16, 1943, was submitted by the Assistant District Attorney in charge of the cases, who refused to make such request or join therein. The request was denied.

There being some intimation that a nolle prosequi would be ordered by the Department from the Washington office, the Assistant District Attorney stated to the Court: "As far as the District Attorney's Office is concerned there have been no negotiations, nor reasons to nolle any counts of the indictment." Thereafter, the defendant Krakowitz entered his plea of guilty to the second count of the indictment in Case No. 4843, not guilty as to the first count, and not guilty as to the one count of the indictment in Case No. 4842. The defendant Rosenthal entered his plea of guilty to the second count of the indictment in Case No. 4843, and not guilty as to the first count thereof.

Nothing further was done in the cases until June 14, 1943, when the defendants were again before the Court represented by their counsel, Mr. Schwartz. The Government was represented by Mr. Gerald L. Wallace, Special Assistant to the Attorney General, Mr. Calvin Crawford, the District Attorney, and Mr. Ray O'Donnell, Assistant District Attorney. The two investigators who had prepared the case and conducted the investigation were present, that is, Mr. Maess, Internal Revenue Agent, and Mr. Weaver, Special Agent.

It was during the course of this hearing that the motion to enter a nolle prosequi was made by Mr. Wallace, who also made the statement for the Government. The Court now comes to the consideration of the facts and circumstances revealed in the statement of Mr. Wallace and the statements of the agents. It is, at the present time, unnecessary to consider other phases of the case, for it is upon the information produced by the Government, that the Government moves for the nolle prosequi and the motion should be tested by that information.

The Commissioner of Internal Revenue brought these cases to the attention of the Department of Justice by a letter dated November 26, 1942, in which prosecution was recommended. Mr. Wallace personally approved the recommendation December 11, 1942, and the cases were forwarded to the District Attorney for presentment to the grand jury. Even before the cases had left the Washington Office, three or four attempts were made by attorneys for the defendants to prevent criminal prosecution, and these efforts being futile, another attempt was made to persuade the Department to abandon the prosecution at about the same time that the indictment was being returned.

It was late in May when the Department was next approached with an intimation that the defendants might consider pleading guilty. This occurred the month following the statement made by counsel for the defendants in open Court: "If I am retained in the case, the case will result in a plea of guilty being entered. If not—" At the time the statement was made to the Court, the Department had rebuffed the overtures of representatives of the defendants. However, when informed in May that the defendants might consider entering pleas of guilty, the Department informed representatives that it was the practice of the Department, upon submission of an unconditional plea of guilty to a major count, to dismiss the remaining counts. The defendants offered to so plead, and to pay the taxes, penalty and interest due. The amounts were determined by the Bureau of Internal Revenue, Treasury Department, and subsequently the defendants, in accordance with this information and with the offer, deposited the sum of approximately $77,000. A recommendation was made that the offer be accepted, Mr. Wallace joined in the recommendation and on June 11, 1943, about six weeks after counsel for the defendants had informed the Court that if he remained in

the case, and he did remain, there would be a plea of guilty, and seven days after they had entered their plea of guilty to the one count, the Attorney General formally accepted their offers.

Let us now consider the facts presented by the Government and having to do with the standing of the defendants before this Court. It appears that the defendant Krakowitz showed an individual income of $2,200 for 1936, the year now in question, and that he paid no taxes thereon. His correct income was approximately $25,000 and the tax which should have been paid amounted to some $2,550. For the year 1936, the corporate income was reported by the defendants to show a net loss of approximately $1,300, whereas it should have shown a profit of about $33,000, and a tax amounting to approximately $7,200 should have been paid thereon. The defendants for the year 1937 showed a net loss of about $1,400 for the corporation, but the investigations of the agents showed a profit of about $40,000, upon which the approximate correct tax should have been $8,800. These are not petty evasions, nor under the circumstances, can all the offenses be regarded as having coalesced into the single count to which the defendants have pleaded guilty.

It may be added that the information now before the Court does not indicate that the facts set forth by the indictments cover all the activities of the defendants in tax evasion. The agents report understatements in the corporate returns each year from 1932 to 1939. No returns were filed by the individuals from 1932 to 1935. Mr. Krakowitz began filing his returns in 1936 and Mr. Rosenthal began in 1937. Understatements were found for the corporation and both individuals for 1932. The return of Mr. Krakowitz for 1940, filed March 15, 1941, showed an understatement of income. It thus becomes quite clear that after the investigation started in February, 1938, false and fraudulent returns were still being filed by the defendants in open defiance of the taxing authorities. As Mr. Wallace has so aptly stated: "The existence of a willful attempt to defeat and evade the tax is clear on its face. * * *" And again: "Mr. Krakowitz has never filed any income tax return, starting in the year 1932, which accurately reported all of the income received. He has either failed to file returns altogether in the earlier years which were not included in the indictments be-

cause the statute of limitations had run, or when the returns were filed they were false * * *." These facts should have bearing upon the attitude of both the Department and the Court toward the defendants.

In the instant case, the facts do not indicate a corporation in which there is divided authority or in which there is doubt as to responsibility. The guilt with respect to the corporate returns rests unquestionably and squarely upon the two defendants. Their pleas of guilty to the second count of the joint indictment is conclusive of their own recognition of that fact. Each of the defendants owned fifty per cent of the capital stock of the corporation and Mr. Rosenthal kept the books. The fruits of their evasions were kept in a joint bank account, but apparently Mr. Krakowitz reaped most of the benefits from it.

The plans used by the defendants in concealing their evasions are also worthy of some consideration. According to Mr. Wallace, the principal part of the scheme involved the keeping of totally inadequate records from which many of their transactions were omitted. These unrecorded items amounted to approximately $31,000 for the year 1936 and $38,000 for 1937. Just how well the concealments were effected may well be judged from the length of time required by the investigators to ascertain the facts. Mr. Maess testified that the examination required 161 days for the corporation; 16 days for Mr. Rosenthal; and 36 days for Mr. Krakowitz; a total of 213 days. Mr. Weaver stated that he had spent approximately 90 days in the investigation in addition to the time spent by Mr. Maess. It is therefore apparent that the total time necessary to complete the investigation amounted to practically one year's working time for one man. A secondary method of concealment mentioned by Mr. Maess was that employed by Mr. Krakowitz, wherein he transferred sums to certain individuals to hold in trust for him, the individuals making loans and the money coming back to them. This, however, is but an incident of the main plan which required so much painstaking effort on the part of the agents in determining the facts.

Mr. Wallace stated to the Court that the degree of cooperation given by the defendants to the agents in ascertaining the facts of a case is a matter to be considered in the final disposition of the case, and with this principle the Court agrees. Mr. Wal-

lace has spoken of the utter lack of cooperation at various points in the record. Two of his statements may be quoted as follows:

"* * * the defendants did not cooperate with the agents in the investigation that the agents had to dig out the facts for themselves without assistance from the defendants, that they were confronted with a succession of false statements and explanations with respect to the discrepancies between the income return and what was later determined to be the correct income * * *."

"* * * it has not been denied, that while the investigation was in progress and before the agents succeeded in demonstrating that there were substantial items of income omitted, they did not receive any cooperation or help of any kind."

Mr. Maess has also testified with regard to the lack of cooperation given by the defendants. Replying to a question of the Court as to how much cooperation had been given, he answered "None". According to his further testimony: "So that therefore, during the entire examination the taxpayers, both Mr. Rosenthal and Mr. Krakowitz tried to confuse the examining officers, and further they claimed 'Well, if we made all this money where is the money at?'". And: "Whenever we would bring the information to the taxpayers' attention they would claim it was contrary to the facts in the case." Mr. Weaver said: "These defendants never gave us an item of income at all. We had to go out and find it ourselves." Evidently the officers of the Government found no spirit of cooperation and have so unequivocally reported. Truly these facts should be considered in the final disposition of the cases.

There is but one other factual aspect of these cases for present discussion, and that is the attitude of other officers of the Government concerning the agreement which the Court is now asked to sanction. Perhaps it may seem that the Court should take no cognizance of these matters, but they are in the record as a part of the statement for the Government. They are a part of the facts before the Court and there is no reason to suppose that eminent counsel for the Government would either inject or permit to be injected into the record, irrelevant or improper facts. In discussing them the Court does not undertake to criticize the acts of other officers of the Government. Perhaps the same facts were not before them, and perhaps, given the same set of facts, the judgment of the Court and that of other officers might still differ. However this may be, the Court is interested in such facts only as they may affect the action of this Court and not with any intent of passing upon their propriety or advisability.

As the situation is now before this Court, the taxpayers have deposited some $77,000 with the Government to cover their civil liability and apparently this amount was based upon figures supplied by the agents and by the computations of the Department. Later, an auditor for the Bureau of Internal Revenue examined the figures and determined that the amount due was about $59,000, or approximately $18,000 less than the deposit. The difference was apparently due to an interpretation of "fraud items" and "non-fraud items" and based upon an approximation said to be due to lack of adequate proof. Hence the final agreement covers the payment of about $59,000, the pleas of guilty to the one count and that a nolle prosequi be entered as to the remaining counts.

Mr. Maess, the Internal Revenue Agent who did most of the investigating, stated that the offer was rejected by the office through which he worked. He was reminded by Mr. Wallace that the Treasurer did solicit the recommendation of Mr. Maess' superior and he gave it, to which Mr. Maess responded "Rejection", and Mr. Wallace agreed: "Quite true, quite true." Mr. Weaver informed the Court that his recommendation had been requested by his superior in Washington and that he had recommended rejection, in which the Revenue Agent in charge concurred. This rejection was coupled with the recommendation that no reduction in amounts be agreed to. Mr. Crawford, the District Attorney for this District, upon being informed by an assistant of Mr. Wallace of the terms of the proposed offer, said "that he did not care for it", but after some explanation said that he would agree. On the same day Mr. Crawford wired indicating "quite definitely his objection to the acceptance of the offers", stating in substance that in his opinion a plea of guilty to all counts would be entered if insisted upon. The offer was formally accepted June 11, 1943, and now the sanction of the Court is sought by the motion now under consideration.

The reasons given by Mr. Wallace in support of the motion are: That it is the practice of the Department to accept a plea of guilty to a major count and to nolle the remainder; and that the expense, time and risk involved in a trial will be avoided.

Without going into detailed summarization of the facts of these cases, the Court may say that it is of the opinion that the facts presented by the Government indicate a much better basis for denying the motion to enter a nolle prosequi than to support such a motion. Nor do the reasons cited by the Government appeal to the Court in a more favorable light. If it be the policy of the Department to accept an unconditional plea of guilty to one count of an indictment, in cases containing multiple counts and multiple indictments, and where separate crimes are involved as in these cases, is that not tantamount to a declaration of policy that an individual may commit but one crime against the Internal Revenue Laws and may thereafter proceed with impunity to the time of indictment?

■ As to the second reason, avoiding trial, the Court inquired of Mr. Wallace whether if the Department had been in possession of the facts theretofore before the Court he would still be making the same recommendation. Mr. Wallace answered: "If there had been definite indication on the part of the defendants to enter pleas of guilty I think the answer to that is 'No'." The record speaks for itself in this respect. There was the statement of counsel for the defendants that if he remained in the cases there would be a plea of guilty, and there is the recommendation of the District Attorney made to the Department. These facts are before the Court and the Court is of the opinion that they, taken into consideration with all the other facts presented by the Government, do not justify a nolle prosequi of any count of either indictment, but quite the contrary.

Mr. Wallace has argued to the Court however, that upon the presentation of such a motion, the Court is powerless to deny it, no matter what the factual showing may be, and no matter how repugnant the proposed motion may be to the conscience of the Court. Let us therefore examine the authority cited by the Government in support of this contention.

The English authority cited, taken at its face value, holds only that the prosecuting authority has the power *to enter* a nolle prosequi.

The remaining cases are those few cited as authority in practically every text, case, or discussion involving any phase of the question of the power to nolle. The only expression by the Supreme Court of the United States cited in the list is that found in Re Confiscation Cases, 1868, 74 U.S. 454, 457, 7 Wall. 454, 457, 19 L.Ed. 196. These cases are remarkable chiefly because of the fact that they are often cited on the question of the power of the prosecuting officer to enter a nolle prosequi. They are still more remarkable because that question was not before the Court in those cases.

The circumstances were these, libel suits had been brought in Admiralty against certain vessels claimed to have been used in rebellion against the United States. Under the statute an informer was given an interest in the proceeds. On appeal, the Attorney General moved to dismiss and objection was made that the rights of the informer would be prejudiced thereby. In passing upon this actual question presented, the Court used the language now quoted in the brief for the Government, as follows: "Public prosecutions, until they come before the court to which they are returnable, are within the exclusive direction of the district attorney, and even after they are entered in court, they are so far under his control that he may enter a *nolle prosequi* at any time before the jury is empanelled * * *." The customary source of precedent or authority usually found in decision of the Supreme Court is lacking. However, if this expression of opinion be the law, again it holds only that the prosecuting officer has the right *to enter* a nolle prosequi, "so far as the interests of the United States are concerned." In short, it is indicated that he has exclusive power and authority to represent his client, the United States, before the court, and to such degree, that no other attorney will be recognized by the court in opposition to it. This is no strange doctrine; it but defines the power and authority possessed in general, by every trial lawyer over the case of his client. In no part of the opinion, did the Court intimate that these customary powers would free the attorney from the customary and historic supervisory and directive powers inherent in courts; much less does it intimate that the prosecuting authority has by some strange process of

transmigration, acquired such powers over courts. This doctrine of exclusive control by the District Attorney over the case of his client, was followed with such rigor by the Circuit Court, S. D. New York, in United States v. Davis, June 1869, 25 Fed. Cas. page 773, No. 14,923, that the District Attorney was recognized by the Court to the exclusion of any control which the Attorney General might exercise over the District Attorney or the case.

In the Davis case, it appeared that the Attorney General had by letter directed the District Attorney to permit the defendant to leave the country, and that in disobedience to the instruction given, the District Attorney moved to "put the defendant upon his trial". That motion was sustained, and the Court, in passing upon a motion for arrest of judgment and a new trial, said: "This ruling, it is insisted, was erroneous, and it is claimed that the court was bound judicially to recognize the instructions of the attorney general, and, consequently, not to put the defendant on trial. I see no reason to doubt the correctness of the ruling complained of. If the attorney general has power to give any directions whatever to a district attorney, in respect to his official action, in regard to indictments found by a grand jury, and presented by such grand jury to the court, for its action thereon, and if, assuming that the attorney general has that power, such a direction as that claimed to have been given by the attorney general in regard to this defendant, can be said to be fairly within its scope, it is certain that such a direction is for the district attorney alone, and that it does not control the court. The court is not bound to construe or consider the official communications made to the district attorney. That responsibility belongs to the district attorney himself, who must act upon his own views of their validity and effect, and who, alone, is known to the court as representing the United States in a criminal case. Accordingly, when the district attorney moves the trial of a criminal case, he is, in the absence of any suggestion of collusion, entitled to have his motion granted, unless legal reasons to the contrary be shown. Neither the wishes nor the instructions of the attorney general furnish, of themselves, such reasons, nor do his communications to the district attorney afford evidence of the facts stated therein,

upon which a court can render a decision; while the fact that the defendant was sought to be put upon his trial without having been afforded an opportunity to place himself beyond the jurisdiction of the court, although accompanied with the further fact that instructions to give him such opportunity were issued by the attornel general, would not justify the court in denying the motion of the district attorney to proceed with the trial." 25 Fed.Cas. at page 774, No. 14,923. The stated law of the Davis case is, therefore, in keeping with the expression contained in Re Confiscation Cases, and that is: The District Attorney has the exclusive power and authority to represent the United States before the court to such degree that the court will recognize no other attorney. The Court does not, however, at any point in its opinion, concede that such powers are in any manner binding upon the Court. The terms upon which the motion is made by the prosecuting officer are clearly stated and the directive power of the Court in this respect definitely reserved.

This theory that the prosecuting officer insofar as his client, the Government, is concerned, is in charge of the prosecution, but subject nevertheless to the supervisory powers of the court, has been well and carefully expressed in some of the other cases cited herein by the Government. In United States v. Shoemaker, C.C.D.Ill.1840, 27 Fed.Cas. page 1067, No. 16,279, the Court had before it the question of whether or not after the jury was impanelled and witnesses sworn, a nolle prosequi then entered would prevent later prosecution. Thus nothing more was involved than the question of whether or not the Government, the client of the District Attorney, was bound by his nolle prosequi. The Court answered this question in the affirmative, but went further, saying: "There can be no doubt that, before the trial is gone into, the prosecuting attorney *has a right,* under leave of the court * to enter a nolle prosequi on an indictment, and such entry is no bar to a subsequent prosecution for the same offence." 27 Fed.Cas. at page 1067, No. 16,279. Clearly recognizing the principle that the Government, as the client, had the right to, and did authorize its attorney, but that such authority was one to be exercised subject to a sound judicial discre-

---

* Indicates that the emphasis is by the author of this opinion.

tion, when the matter came before the court.

The same theory is equally apparent in United States v. Stowell, C.C.D.Mass.1854, 27 Fed.Cas. page 1350, No. 16,409, cited by the Government. The Court had before it a motion to quash an indictment. It found the indictment defective and sustained the motion. The attention of the Court was, then directed to similar cases, not then before the Court, but having the same defects. The District Attorney stated that these cases were not then before the Court, and that he would enter a nolle prosequi as to each of them. The Court said: " * * * as a general rule, the prosecuting officer has power at any time before a jury is impanelled, to enter a nolle prosequi. *The court will not restrain this power, if he chooses to exercise it, in these cases."* 27 Fed.Cas. at page 1356, No. 16.-409. Without doubt, the Court entertained the opinion that although the prosecuting officer did possess the power to enter a nolle prosequi, it was subject to restraint by the Court, which the Court promised not to use in the cases then under consideration. As a matter of fact, the seventh syllabus of the Stowell case, reads: "The district attorney has power *under the control of the court,** at any time before a jury is impanelled, to enter a nolle prosequi." Could the principle be more clearly stated?

Another class of cases has been cited by the Government, which has no direct bearing upon the question now under consideration, as to the control of the court over the power possessed by the prosecuting officer. In United States v. Coolidge, C.C. D.Mass.1815, 25 Fed.Cas. page 622, No. 14,858, the attorney for the defendant moved the Court to "advise the district attorney to a nolle prosequi". 25 Fed.Cas. at page 622, No. 14,858. This the Court declined to do, saying that it was not its practice "to advise or control the district attorney in this respect." 25 Fed.Cas. at page 622, No. 14,858. With this statement of principle, this Court is in complete agreement; it would be as improper for the court to seek to dictate to the district attorney what motion he should file in any particular case, as it would be for the district attorney to attempt to dictate to the court what action should be taken upon the motion after it is before the court. Each has his own sphere wherein he may exer-

cise his own official discretion, and neither should impinge upon the other.

■ Belonging to the same class is Cooper v. O'Connor, 1938, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440. The case before the Court was an action for malicious prosecution, and the Court held: "The prosecution of banker indicted by grand jury for violating the banking laws of the United States, and the powers to enter a nolle prosequi, dismiss, or refuse to prosecute were within the scope of the official duties of the district attorney, and the assistant district attorney, and hence they were not liable to banker for damages suffered by banker as a result of the prosecution of one indictment and the entry of a nolle prosequi of two indictments." (Syl. 6) Insofar as this Court is informed, no court has questioned the fact that the power to enter a nolle prosequi, insofar as his client, the Government, is concerned, has been given to the district attorney, and it is within the scope of his duties. This Court has no more intention of questioning that fact than it has of conceding that the control of this Court over a motion before it is subject to the dictates of the prosecuting officer.

A case of the same character, not cited by the Government, but cited as authority in Cooper v. O'Connor, supra, is Felder v. United States, 2 Cir., 1925, 9 F.2d 872. Felder was indicted with others, charged with a conspiracy to bribe the prosecuting officers for the Government to secure immunity from prosecution. The Court held that the power to nolle was so far within the control of the United States Attorney, that a conspiracy to corrupt him by procuring him to dismiss the criminal prosecution did come within the provisions of Sec. 37 Penal Code, 18 U.S.C.A. § 88. The question before the Court was no broader and the decision went no further in that respect, except to say that it did prefer the authority of United States v. Watson, 28 Fed.Cas. page 501, No. 16,652, decided by the same Court, to that of United States v. Corrie, 25 Fed.Cas. page 658, No. 14,869. The actual question decided, however, had nothing to do with the power of the court over the authority admittedly granted by the Government to the district attorney. Certainly the district attorney is authorized to present his case before the court and jury and it would be a criminal conspiracy

---

Emphasis added by the author of this opinion.

to confederate for the purpose of having him "throw" the case in court, but it does not follow that by his possession of the right in that sense, that he is released from all rules of propriety and evidence in presenting his case in court. Nor does it logically follow that the possession of a right or duty by an attorney or other officer of the court, deprives the court of any right to regulate the exercise thereof.

Another case of the same class is Ex parte Altman, D.C.S.D.Cal. 1940, 34 F.Supp. 106, cited in the brief for the Government. Altman was indicted in the Eastern Judicial District of Michigan. The case was dismissed by the judge upon his own motion, for want of prosecution, and reinstated upon motion of the Government. It came before the District Court, Southern District of California, upon an application for a writ of habeas corpus to release him from custody upon a warrant of removal to Michigan. No nolle prosequi was ever entered or considered insofar as the record shows. All that was said on that subject was: "The right to enter a nolle prosequi or to dismiss a prosecution in federal courts lies exclusively with the United States Attorney. 16 C.J. 437, 438; United States v. Woody, D.C.Mont.1924, 2 F.2d 262; * In re Confiscation Cases, 1868, 7 Wall. 454, 457, * 19 L.Ed. 196. But it is not questioned that the Court, in the exercise of its jurisdiction, has the inherent power to order a dismissal for failure to prosecute * * *". 34 F.Supp. at page 108. Although, as observed, the question of power to enter a nolle prosequi, was not before the Court, that was named as one of two exclusive powers belonging to the District Attorney, one of which was held directly subject to the inherent power of the Court.

Some of the cases cited by the Government fall within a different category, in that they do not directly involve the question of the power of the prosecuting officer, yet the courts which rendered the decisions did, by way of obiter dicta, hold that these officers possessed such powers over which the courts had no control. A case of this class is United States v. Schumann, C.C. Cal.1866, 27 Fed.Cas. page 984, No. 16,-235. It came before the Court upon a question certified by the United States Commissioner, as to the right of a district attorney to control proceedings before the Commissioner. The Court found the district attorney without power to dismiss a criminal charge while the examination was proceeding before the Commissioner. Having thus disposed of the question before it, the Court then went further and held that the District Attorney thereafter, might "enter a nolle prosequi, even without the consent of the court." 27 Fed.Cas. at page 985, No. 16,235. The Court cites no authority for this opinion and in the natural course of events, it must have anticipated by several days the question which it professed to answer.

A second case falling in the same category is United States v. Bioff et al., D.C. S.D.N.Y.1941, 40 F.Supp. 497. The defendants filed a demurrer and plea in abatement to the indictment. It was contended by them that the indictment disclosed on its face that evidence was presented to the grand jury that the Attorney General had directed that the prosecution commence; that such evidence is not probative of the commission of a crime; and secondly, that the act under which the case was brought was an unconstitutional delegation of power to the Attorney General, in that it left to his determination, whether a prosecution should commence. These were the questions. The Court said, with reference to the discretionary power of the Attorney General: "Is that not a choice which every prosecutor has with respect to every offense? The United States Attorney has the power, after indictment found, to enter a nolle prosequi. The approval of the court is not requisite. United States v. Woody, D.C., 2 F.2d 262; United States v. Coolidge, 1819, Fed.Cas.No.14,858, 2 Gall. 364; Cf. United States v. Watson, Fed. Cas.No.16,652, 7 Blatchf. 60." 40 F.Supp. at page 498. This court ventures the opinion that although the question of the right to enter a nolle prosequi, without the consent of the court may have been in the case, it would appear from the reported opinion that the objection was based upon a far different ground, and that is, that the Government insisted upon continuing the prosecution and not upon its dismissal in any form.

Now we come to the discussion of the two cases cited by the Government in which the respective courts have held that the power to enter a nolle prosequi held by the

prosecuting officers may be exercised independently of the court. The only clear-cut and unreserved holding to that effect is found in United States v. Woody, D.C.D. Mont.1924, 2 F.2d 262. That Court held: "The district attorney has absolute control over criminal prosecutions, and may dismiss or refuse to prosecute in his discretion, notwithstanding disapproval by the court." (Syl.) The Judge, after reciting facts repugnant to the sense of decency of the Court, reluctantly sustained the motion for leave to enter a nolle prosequi, basing his opinion upon the Confiscation Cases, supra, and United States v. Davis, supra, neither of which, in the opinion of this Court, justify the conclusion reached. It is the further opinion of this Court, that the facts recited in the Woody case are sufficient to justify all courts in refusing to grant motions for leave to nolle, except within the exercise of that sound judicial discretion inherently ascribed to all courts.

The second case is United States v. Watson et al., C.C.S.D.N.Y.1869, 28 Fed.Cas. page 501, No. 16,652. It was the holding of the Court that it was required to grant a motion to enter a nolle prosequi on motion of the District Attorney, but that under proper circumstances, action might be delayed until the Government "should have had sufficient time to protect itself against collusion." (Syl.) The only authority cited is an English case. In passing, suffice it to say that it is difficult to imagine a power possessed by the district attorney, before which the court is compelled to bow, yet subject to the supervisory control of the court.

There is one case, not cited by the Government, which is worthy of careful consideration; that is, United States v. Corrie, C.C.D.S.C.1860, 25 Fed.Cas. page 658, No. 14,869. This case stands as a clear-cut repudiation and denial of the theory now advanced by the Government. Quoting from the opinion of Judge Magrath: "* * * when the court permits an entry to be made in its minutes of the entry of a nolle prosequi, it adopts and justifies that proceeding. If then, the court cannot refuse its leave to the entry of a nolle prosequi, it cannot refuse its assent or withhold its justification to the prosecuting officer, however desirous or even bound it may be to do so. That to answer all the purposes for which a nolle prosequi is intended, it should be entered in the minutes of the

court; that it cannot be entered in these minutes without the assent of a judge; would seem to lead to no other conclusion than that a motion to enter it must be addressed to the discretion of the court. In this case I refuse assent to an entry of it." 25 Fed.Cas. at page 669, No. 14,869. In support of its position, the Court quotes from an opinion of Chief Justice Taney, rendered while he was the Attorney General of the United States: "This power (said he, referring to the nolle prosequi) over criminal prosecution has been familiarly exercised by the attorneys for the United States, and also by the attorneys for the several states prosecuting in behalf of the public. It is true that in all such cases, they uniformly act, I believe, with the approbation of the court; but this approbation is commonly asked for by the attorney for his own protection. It is not necessary in order to give him the authority, but it is his justification for the manner in which his authority is used, and since he cannot consult his client (the United States) the sanction of the court is regarded as sufficient evidence that he exercised his power honestly and discreetly. Hence he invariably asks for it. It is defense to the public, if his conduct in that respect should be impeached; for if any doubts rested in the mind of the court of the fairness and propriety of the measure, they would not suffer the entry to be made." 25 Fed.Cas. at page 667, No. 14,869. Mr. Taney was speaking as the Attorney General of the United States. Clearly he stated the purpose of such a motion addressed to the Court and that purpose becomes a nullity; its accomplishment a judicial farce and a fraud upon public opinion, if the Court may exercise no discretion in passing upon it. Mr. Taney recognized this fact and expressed it aptly: "* * * for if any doubts rested in the mind of the court of the fairness and propriety of the measure, they would not suffer the entry to be made." 25 Fed.Cas. at page 668, No. 14,869. Despite this clear statement of principle by Attorney General Taney, periodically the claim of absolute power of control by the prosecuting officer returns to haunt the halls of Federal Jurisprudence, shrouded in the sacrosanct trappings of English antiquity and draped with the deceiving gauze of obiter dicta.

This Court has no intention of entering that field in this opinion. There is but one question before the Court and this has

already been stated, but perhaps it should be repeated: "Should this Court sustain the motion of the Attorney General for a nolle prosequi in said cases?" The Court finds, from the facts of the cases now before it, that the entry of a nolle prosequi is not justified. Even the Assistant Attorney General doubted that the Department would have taken its present stand, had it been in possession of these facts. It remains only to determine whether or not this Court has discretionary power to sustain or deny the motion.

The decisions of the Supreme Court are of course binding upon this Court in any case, but the only authority cited from that Court is In re Confiscation Cases, which in the opinion of this Court does not determine the question before it. No other decisions binding upon this Court have been cited. Of the cases discussed in this memorandum, which include all those cited by the Government and a few in addition, two hold that the power of the prosecuting officer is to be exercised under control of the court (United States v. Shoemaker; United States v. Stowell); four touch upon the question only by way of obiter, but without directly stating the theory of the Government (United States v. Coolidge; Cooper v. O'Connor; Felder v. United States; Ex parte Altman); two contain obiter dicta denying court control (United States v. Schumann; United States v. Bioff et al.); one holds that there is no power of control in the courts (United States v. Woody); one that the court has power only to delay (United States v. Watson et al.); and one that the court has absolute power to control (United States v. Corrie), the Corrie case being the one in which the opinion of Attorney General Taney is quoted.

Obviously, this Court is not bound by decisions in the Watson and Woody Cases, nor is it bound by the decision in the Corrie case. The Court is therefore in position to exercise its own independent judgment. This judgment is based upon the theory expressed by Attorney General Taney, that the motion is addressed to the Court for its sanction by way of justification, for as he said: " * * * if any doubts rested in the mind of the court of the fairness and propriety of the measure, they would not suffer the entry to be made." 25 Fed.Cas. at page 668, No. 14,869. This Court finds that the facts of the cases now before it are such that the Court most seriously doubts the fairness and propriety of the motion.

Admittedly, the prosecuting officer is clothed by his client, the Government, with administrative authority to enter a nolle prosequi insofar as the Department is concerned. At present, it is unnecessary to determine whether or not such authority represents, also, a power that is conclusive upon the courts wherein it is sought to be exercised.

■ This Court holds as a matter of law, however, that when the prosecuting officer, as in this case, does not seek to enter a nolle prosequi solely upon his own responsibility, but by motion asks the sanction of the Court as his justification for the manner in which his authority is used, such motion seeks the active exercise of the sound judicial discretion of the Court. Under the circumstances, more than a mere ministerial or administrative act is involved; a judicial determination is sought, and the Court may grant or withhold its sanction as the circumstances may require. The determination required is a judicial determination in which the Court is not constrained by the desires or recommendations of the prosecuting authority. It is for the administrative departments to clothe their representatives with authority; but it is for the courts to say whether or not such authority shall be exercised through the arm of the court and sanctioned by court approval.

The motion of the Government will be denied.

Entry accordingly.