Daniel Richman, Asst. U.S. Atty., New York City, for plaintiff.

Ronald Rubinstein, Kew Gardens, N.Y., Charles Rominger, Dilley and Dilley, Grand Rapids, Mich., and Ruth M. Liebsman and Richard B. Lind, New York City, for defendants.

**UNITED STATES of America**

v.

**Brooks Gregory DAVIS, et al., Defendants.**

**No. 87 Cr. 853 (TPG).**

United States District Court, S.D. New York.

Aug. 25, 1989.

## OPINION

GRIESA, District Judge.

Certain issues need to be decided prior to the imposition of the sentences in this case. There is a difference of view as to whether the Sentencing Guidelines apply to Count 1. The Government contends that they do apply, and all four defendants argue to the contrary. Also, Wayne Davis has asked for a ruling that he may make statements to the Probation Department and to the court in connection with his sentencing without having such statements used except in the sentence proceedings. Finally, defendant Mary Ferguson moves to have the indictment against her dismissed on the ground of double jeopardy.

With regard to the application of the Sentencing Guidelines, it has been held that these guidelines should be applied to crimes committed after their effective date, November 1, 1987, but not to crimes occurring before that date. *United States v. Correa–Vargas*, 860 F.2d 35, 36 (2d Cir. 1988). However, courts in two cases have found that conspiracies which commenced before November 1, 1987 and continued after that date involved sufficient criminal conduct after the effective date of the guidelines to justify their application. *United States v. White*, 869 F.2d 822, 826 (5th Cir.1989); *United States v. Gasporotti*, No. 88–00094–01, slip. op. at 6, 1988 WL 137326 (E.D.Pa. Dec. 19, 1988).

■ The present case has its own particular facts and must be dealt with in light thereof. The conspiracy charged in Count 1 was a conspiracy to distribute heroin and cocaine in violation of various sections of Title 21, United States Code. There were a number of superseding indictments, the last of which (the fifth) was filed on May 26, 1988. Count 1 charges that the conspiracy lasted from January 1974 until the date of the filing of the indictment, and alleges 13 overt acts. Eleven of these relate to events occurring between 1974 and the summer of 1987. The 12th and 13th overt act allegations relate to events occurring in April 1988 in connection with the shooting of a prospective Government witness, Isaac Diggins.

The various proceedings in the case made it abundantly clear that the Government was charging in Count 1 a conspiracy which included (1) the active distribution of narcotics over a period of several years until the time of the arrest and surrender of the major defendants in October 1987, and (2) certain activities after October 1987 designed to silence witnesses and to assist in the perpetuation of the narcotics conspiracy. The second phase of Count 1 is echoed in Count 9, charging Brooks Davis, Wayne Davis and Claddis Arrington with conspiracy to prevent the testimony of witnesses. Count 9 is brought under 18 U.S.C. § 1512.

All four defendants were convicted on Count 1 and the three defendants named in Count 9 were convicted on that count.

With regard to Count 1, the court must assume that the conviction related to the full scope of the count as charged. There is no basis for the court to conclude that the jury convicted *only* on activities occurring prior to the time of the arrests and surrenders in October 1987 and *did not* convict on the basis of the activities designed to silence witnesses occurring after October 1987.

However, for purposes of sentencing on Count 1, it is clear that the predominant consideration of the court will relate to the narcotics distribution activities, all of which occurred before November 1, 1987. Some indication of this is given by the Presentence Report prepared by the Probation Department.

On the assumption that the Sentencing Guidelines would apply to Count 1, Probation has submitted to the court a lengthy summary of the "Offense Conduct" and calculations of the "Offense Levels." The description of the Offense Conduct occurring before November 1, 1987 occupies five pages, and the material relating to events after November 1, 1987 occupies about 1½ pages. In the case of Brooks Davis and Wayne Davis, the Offense Level is calculated as 44, of which 42 levels relate to narcotics distribution occurring before November 1, 1987 and two levels relate to obstruction of justice occurring after November 1, 1987. The Probation Department states that the two levels for obstruction of justice apply not only to Count 1, but take into account Count 9. In the case of Claddis Arrington the Offense Level is 40, of which 38 levels are for narcotics distribution before November 1, 1987 and 2 levels are for obstruction of justice committed thereafter. As to Mary Ferguson, the Offense Level is 39, all of which relates to narcotics distribution before November 1, 1987. Whether the court would ultimately find these precise Offense Levels, if the guidelines were to apply, is not certain. However, the Probation Department calculations can be taken as a strong indication that by far the

major factor determining the sentences on Count 1 will be the narcotics activity occurring before November 1, 1987.

The court believes that it is inappropriate to apply the Sentencing Guidelines to Count 1, where the great bulk of the criminal activity took place before the effective date of the guidelines. And it must be kept in mind that Count 1 is brought under the federal narcotics statutes (as distinct from Count 9, which is brought under the statute prohibiting interference with witnesses), and all the actual narcotics distribution was committed before Novmeber 1, 1987. This is not to say that efforts to silence witnesses were not part of Count 1. But for purposes of *sentencing,* the court concludes that it should look mainly to the actual narcotics activity to determine whether the guidelines should apply. The court rules that the Sentencing Guidelines do not apply to Count 1.

Only brief mention needs to be made of Mary Ferguson's double jeopardy motion. The first trial was aborted as to Mary Ferguson, along with the other defendants, because it would have been entirely impractical to continue the trial as to Mary Ferguson alone. Part of the reason for this was, as the court of appeals noted, that the testimony about attorney Simels' conduct was admissible against Mary Ferguson as well as against the other defendants. *See, United States v. Arrington,* 867 F.2d 122, 129–30 (2nd Cir.1989). The remarks of the court of appeals about the structure of the trial turned out to be an accurate prediction of what occurred at the new trial. The application of Mary Ferguson is denied.

■ The final matter for disposition is the request of Wayne Davis for permission to make statements to the Probation Department and to the court in connection with the sentencing without having such statements used except in the sentence proceedings. As his attorney puts it in a letter dated June 28, 1989, Wayne Davis wishes "to exercise his right to allocute prior to sentence without foregoing his Fifth Amendment privilege and his right to a meaningful appeal."

Wayne Davis exercised his Fifth Amendment right at the trial and declined to testify. He is still entitled to the Fifth Amendment privilege at the time of sentencing, and can decline to make any statement. On the other hand, Wayne Davis is entitled to speak on his own behalf in connection with the sentencing. He is entitled to address any comments to the Probation Department and to the court, which he believes will assist him. One distinction between sentencing and trial is that any comments Davis makes now will not be subject to cross-examination by the Government, at least in the sentencing proceedings.

However, if Wayne Davis decides to speak in connection with the sentencing, there is no rule of law which authorizes the court to grant him immunity against the use of such statements in other proceedings. If Davis chooses to speak, and if he should make admissions of guilt, or should make false statements, certain consequences may follow. There is no basis for the court to insulate him from such consequences. *See United States v. De La Paz,* 698 F.2d 695, 697 (5th Cir.1983).