UNITED STATES of America, Plaintiff,

v.

Julio ABREU, Linda Hinkle, Damaso Vasquez, Nicholas Padilla, John Reyna, Theodore Gonzales, Carlos Arroyo, Hardy Rivera, Richard Melendez, et al., Defendants.

Nos. HCR 89–87, HCR 90–34, HCR 90–35, HCR 90–30, HCR 90–37, HCR 90–38, HCR 90–39, HCR 90–40, HCR 90–41 and HCR 90–49.

United States District Court,
N.D. Indiana,
Hammond Division.

Aug. 2, 1990.

Patrick D. Hansen, Asst. U.S. Atty., Hammond, Ind., for plaintiff.

Alexander Lopez, Merrillville, Ind., for defendant, Julio Abreu.

Michael Muenich, Highland, Ind., for defendant, Linda Hinkle.

Robert Lewis (CJA), Gary, Ind., for defendant, Damaso Vasquez.

Peter J. Hickey, III, St. Charles, Ill., for defendant, Nicholas Padilla.

James A. Greco, Merrillville, Ind., for John Reyna.

Frank Martinez (CJA), Schererville, Ind., for defendant, Theodore Gonzalez.

James Foster (CJA), Hammond, Ind., for defendant, Carlos Arroyo.

David S. Mejia, Oak Park, Ill., for defendant, Hardy Rivera.

Eugene M. Velazco, Jr., Merrillville, Ind., for defendant, Richard Melendez.

Dale Allen, Merrillville, Ind., for defendant, James Kender.

Hawk Kautz, Merrillville, Ind., for defendant, Nestor Reyes.

Pamela Kosenka, Highland, Ind., for defendant, Tammy Graves.

Dennis Zitzer, Chicago, Ill., for defendant, George Santiago.

Steven Kurowski, Merrillville, Ind., for defendant, Frank Smith.

David Saks (CJA), Hammond, Ind., for defendant, Andy Vasquez.

## MEMORANDUM OPINION AND ORDER

LOZANO, District Judge.

This matter is before the court on the government's Response to and Motion to Reconsider Court's Memorandum Opinion and Order of July 20, 1990. The court has rejected tendered plea agreements of defendants, Linda Hinkle, Julio Abreu, and Nicholas Padilla. The court has taken under advisement the tendered plea agreements of defendants, Carlos Arroyo, Theodore Gonzales, Richard Melendez, John Reyna, Hardy Rivera, and Damaso Vasquez. For the reasons set forth herein, the government's Response to and Motion to Reconsider Court's Memorandum Opinion and Order of July 20, 1990, is GRANTED. Having reconsidered its memorandum opinion and order of July 20, 1990, the court now accepts the tendered plea agreements of defendants, Linda Hinkle, Julio Abreu, and Nicholas Padilla. The court will accept the tendered plea agreements of defendants, Carlos Arroyo, Theodore Gonzales, Richard Melendez, John Reyna, Hardy Rivera, and Damaso Vasquez.

## BACKGROUND

On September 20, 1989, the grand jury returned a fourteen count indictment against the defendants, Julio Abreu, Carlos Arroyo, Heriberto Carrasquillo, Theodore Gonzales, Tammy Graves, Linda Hinkle, James Kender, Richard Melendez, Nicholas Padilla, Nester Reyes, John Reyna, Hardy Rivera, George Santiago, Frank Smith, Andy Vasquez, and Damaso Vasquez. By Count One of this indictment, which was numbered HCR 89–87, the grand jury charged these defendants with conspiring from "in or about 1982 through September, 1989, in the Northern District of Indiana, and elsewhere," to "knowingly and intentionally distribute and to possess with the intent to distribute in excess of 5 kilograms of cocaine, ... and in excess of 1 kilogram of heroin," in violation of 21 U.S.C. §§ 841(a)(1) and 846. The mandatory minimum penalty for a violation of 21 U.S.C. § 846 as alleged in this count is ten (10) years imprisonment, to be followed by at least five (5) years of supervised release; the maximum penalty is life imprisonment and $4,000,000.00 in fines. The grand jury also returned a forfeiture charge against the defendant, Hardy Rivera, pursuant to 21 U.S.C. § 853(a)(1), as a result of the criminal activity outlined in Count One of the indictment.

The remaining counts of the indictment charge various defendants with additional narcotics related offenses. By Count Two

of the indictment, the grand jury charges the defendant, John Reyna, with knowingly and intentionally distributing approximately 12.13 grams of heroin, in violation of 21 U.S.C. § 841(a)(1), on or about February 22, 1988; Count Three charges the defendant, Reyna, with knowingly and intentionally distributing 27.51 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), on or about April 1, 1988; and Count Four charges the defendant, Reyna, with knowingly and intentionally distributing approximately 24 grams of heroin, in violation of 21 U.S.C. § 841(a)(1), on or about April 11, 1988. The violations of 21 U.S.C. § 841(a)(1) as alleged in Counts Two, Three, and Four, carry no mandatory minimum penalty and provide that, in the absence of resulting death, serious bodily injury, or prior convictions under 21 U.S.C. § 841(a)(1), the maximum penalty is twenty (20) years imprisonment, to be followed by at least three (3) years of supervised release if the defendant has no prior convictions under this section, and fines totaling $1,000,000.00.

Counts Five and Six pertain only to the defendant, Julio Abreu. By Count Five of the indictment, the grand jury charges the defendant, Julio Abreu, with knowingly and intentionally distributing approximately 3.44 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), on or about July 14, 1988, and Count Six charges the defendant, Abreu, with knowingly and intentionally distributing approximately 14.07 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), on or about July 20, 1988. Violations of 21 U.S.C. § 841(a)(1) as alleged in Counts Five and Six of the indictment carry with them the same minimum and maximum penalties as do Counts Two, Three, and Four.

Counts Seven and Eight pertain only to the defendant, Andy Vasquez. By Count Seven of the indictment, the grand jury charges the defendant, Andy Vasquez, with knowingly and intentionally distributing approximately 28.05 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), on or about August 31, 1988, and by Count Eight of the indictment, the grand jury charges the defendant, Andy Vasquez, with knowingly and intentionally distributing approxi-

mately 83.94 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), on or about September 1, 1988. Violations of 21 U.S.C. § 841(a)(1) as alleged in Counts Seven and Eight of the indictment, also carry with them the same minimum and maximum penalties as do Counts Two, Three and Four of the indictment.

Counts Nine and Ten of the indictment pertain only to the defendant, Heriberto Carrasquillo, who is a fugitive in this case. By Count Nine of the indictment, the grand jury charges the defendant, Heriberto Carrasquillo, with possessing approximately 17.55 grams of heroin and approximately 55.02 grams of cocaine with the intent to distribute these controlled substances, in violation of 21 U.S.C. § 841(a)(1), on or about October 19, 1988. Violations of 21 U.S.C. § 841(a)(1), as alleged in Counts Nine and Ten of the indictment, also carry the same minimum and maximum penalties as do Counts Two, Three, and Four of the indictment.

By Count Eleven of the indictment, the grand jury charges the defendants, Nicholas Padilla and George Santiago, with using a telephone to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 843(b), on or about December 7, 1988. A violation of 21 U.S.C. §§ 841(a)(1) and 843(b) as alleged in Count Eleven carries with it the same minimum and maximum penalties as a violation of Counts Two, Three and Four of the indictment.

Counts Twelve through Fourteen of the indictment pertain to the defendant, Damaso Vasquez, acting alone and with other defendants. By Count Twelve of the indictment, the grand jury charges the defendant, Damaso Vasquez, with knowingly and intentionally distributing approximately 54.66 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), on or about January 9, 1989. By Count Thirteen, the grand jury charges the defendants, Damaso Vasquez and Andy Vasquez, with knowingly and intentionally distributing approximately 50.88 grams of cocaine, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), on or about January 19, 1989. By Count Fourteen of the indictment, the grand jury

charges the defendants, Damaso Vasquez and Tammy Graves, with possessing 446.2 grams of cocaine with the intent to distribute it, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), on or about February 2, 1989. Violations of 21 U.S.C. § 841(a)(1), as alleged in Counts Twelve through Fourteen of the indictment, carry the same minimum and maximum penalties as do Counts Two, Three, and Four of the indictment.

On October 23, 1989, this case was set for a jury trial to commence November 27, 1989. The government represented this trial would require approximately eight (8) weeks to complete. On November 8, 1989, the jury trial setting of November 27, 1989 was vacated and reset for January 22, 1990. Thereafter, the trial was reset from January 22, 1990 to April 2, 1990. Meanwhile, arrangements were made to construct an extension for the jury box in the courtroom, in anticipation of the greater number of jurors necessary to complete an eight (8) week trial, and the United States Marshals made arrangements to hire several additional part-time personnel in order to maintain the higher level of court security which would be required for a trial of sixteen defendants on drug-related charges. Additionally, this court cleared eight (8) weeks of its calendar in order to be able to sufficiently conduct the trial.

Many of the defendants filed pretrial motions in this case and several hearings were held. Most notable, for purposes of this discussion, was the motion to suppress filed by the defendant, Hardy Rivera, on March 12, 1990. By his motion, the defendant, Hardy Rivera, challenged the search warrant issued for and executed on his home on October 13, 1988, as well as the validity of the search of his person and truck on that date. On March 19, 1990, the court conducted a hearing and at its conclusion, orally denied the defendant's motion. On May 18, 1990, 738 F.Supp. 1208, the court issued its order setting forth its findings of fact and conclusions of law. The court reaffirmed its denial of the defendant's motion as to all issues except those concerning the removal of the sum of money from the defendant's pocket on October 13, 1988; the court vacated its previous ruling as to that evidence and ordered that evidence suppressed. Among other things, this court, in reviewing the sufficiency of the search warrant for the defendant, Hardy Rivera's house, found that on October 13, 1988, Magistrate Andrew P. Rodovich, in ruling on an application for a search warrant, had before him a substantial basis for believing that on October 13, 1988, the defendant, Hardy Rivera's, house contained evidence of narcotics trafficking. This court also found substantial basis for believing that the defendant, Hardy Rivera, was the leader of a group comprised of many if not all of the co-defendants, which allegedly engaged in narcotics trafficking activity and was commonly referred to by investigators as "the balloon people", due to their method of packaging controlled substances in balloons.

On March 27, 1990, each of the defendants, with the exception of defendant, Heriberto Carrasquillo, who is a fugitive, and defendants, Tammy Graves and Richard Melendez, tendered pleas of guilty subject to plea agreements reached with the government. Eleven of these thirteen defendants, specifically, defendants, Julio Abreu, Carlos Arroyo, Theodore Gonzales, Richard Melendez, Nicholas Padilla, John Reyna, Hardy Rivera, Damaso Vasquez, Frank Smith, James Kender, and Linda Hinkle, tendered pleas of guilty to informations filed by the United States attorney. With the exception of the defendants, James Kender, whose plea agreement was filed January 25, 1990, under HCR 90–06, Nester Reyes, whose plea agreement was filed March 21, 1990, under HCR 90–30, and Frank Smith, whose plea agreement was filed on March 22, 1990, under HCR 90–31, each of these plea agreements was filed on March 26, 1990, or March 27, 1990, while the plea hearings were being conducted, approximately eight (8) days before trial.

Each defendant tendering a plea of guilty to an information subject to a plea agreement reached with the government, was charged by such information and agreed to plead guilty to conspiracy to distribute and/or to possess with intent to

distribute a controlled substance, in violation of 21 U.S.C. § 846. However, unlike the original charge in Count One of the indictment in HCR 89–87, these new informations either fail to specify the amount of controlled substance in question, or contained allegations that the amount of controlled substance in question was in excess of one (1) kilogram. Additionally, unlike the original indictment, each new information provides that the conspiracy ended prior to November 1987. Each plea agreement involving the tender of a plea of guilty to an information calls for the dismissal of all charges pending against the defendant under indictment No. HCR 89–87.

During the course of the hearings held March 27, 1990, this court held the plea agreements under advisement and informed the government and defense counsel of its reservations about accepting these agreements. The court indicated that the agreements, which also feature the dismissal of all charges in HCR 89–87, appear to be designed to circumvent the Guidelines established by the United States Sentencing Commission under the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551–3742, 28 U.S.C. §§ 991–998. On March 27, 1990, in open court, the court invited the government and all defense counsel to file briefs in support of these plea agreements, inviting the parties to specify the basis upon which the court could accept these plea agreements.

On April 2, 1990, the morning of trial, the defendant, Tammy Graves, appeared and tendered a plea of guilty to Count Fourteen of the indictment. The defendant, Tammy Graves, persisted in her plea of not guilty to Count One of the indictment, by which the grand jury charged her with conspiracy in violation of 21 U.S.C. §§ 841(a)(1) and 846. This plea of guilty was not tendered subject to any plea agreement. The court accepted the defendant's plea of guilty to Count Fourteen of the indictment, and the government then moved to dismiss the only remaining count of the indictment pending against the defendant. In support of its motion to dismiss Count One of the indictment in HCR

89–87 against the defendant, Graves, the government stated that, while the charge was readily provable, this defendant was a more peripheral participant in the conspiracy, and the enormous expense and amount of time that it would require to prove that charge would vastly outweigh the benefit of a conviction on that count. The government also stated that punishment on Count Fourteen would adequately reflect the true level of this defendant's complicity in the "balloon people" conspiracy. Satisfied that the government had made an adequate record for the dismissal of this charge, and that the dismissal was based on good faith, articulable reasons, the court granted the motion and dismissed Count One of the indictment in HCR 89–87 against the defendant, Tammy Graves.

On June 27, 1990, the government filed its memorandum in support of the plea agreements. While the government noted that the court had expressed concern over the plea agreements' apparent circumvention of the Guidelines, the government chose not to submit the reasons for the dismissal of all charges contained in the indictment in HCR 89–87, but rather to discuss the prosecutor's discretion as to whether or not to file charges in any given case. Rather than supply a good faith, articulable basis for the dismissal of an indictment as a condition of these plea agreements, the prosecutor stated merely that:

> A myriad of reasons went into the decision to dismiss and recharge as done in this case—such reasons as most efficient use of prosecutorial resources, the cooperation of some defendants, and the inclusion of additional forfeitures may all have entered into this decision on the part of the United States attorney for the Northern District of Indiana. These factors, and many others that the executive must deal with in deciding whether or not to extend or accept a plea agreement, are not suited for judicial review.

(See government's Memorandum in Support Plea Agreement, filed June 27, 1990, p. 5.) The government did not address the fact that the plea agreements involve the

dismissal of all the charges in a pending indictment, and stated merely that:

The new informations charge an identical conspiracy to that originally charged, however, this time ranging from in or about some time in 1982 through in or about October 1987. This is despite evidence which indicates acts of the co-conspirators [sic] continued beyond the October 1987 date, and in fact may have gone through to the October 1989 date as originally indicted.

(See government Memorandum in Support of Plea Agreement, filed June 27, 1990, pp. 1–2.)

On July 18, 1990, before commencing the sentencing hearing scheduled for the defendant, Nestor Reyes, this court, from the bench, rejected the plea agreement entered into between the government and Nestor Reyes, finding that the plea agreement entered into between the government and the defendant, Nestor Reyes, circumvented the United States Sentencing Commission Guidelines. The court afforded the defendant an opportunity to withdraw his plea of guilty, entered under HCR 90–30, and advised the defendant that the disposition of his case might be less favorable to him than that contemplated by his plea agreement should he choose to persist in his plea of guilty. At that point, both defense counsel and the government moved for a continuance.

On July 20, 1990, the court issued its written memorandum opinion and order setting forth the basis for its findings and ruling on the plea agreement. In setting forth the rationale for its ruling on the plea agreement, the court stated that it had found that the conspiracy charged in this case began in 1982 and continued through September 1989, when the defendants were initially indicted under cause No. HCR 89–87. The court found that, based on all the facts and circumstances in this case, a single conspiracy to engage in the trafficking of heroin and cocaine had been proved and that the conspiracy began some time in 1982 and continued through September 1989. The court found that there was no evidence in the record upon which to find

that any defendant had committed any affirmative act to withdraw from the conspiracy prior to that date, and that, if the conspiracy of which a defendant is found to be a member existed after the Guidelines' November 1, 1987 effective date, then the Sentencing Guidelines shall apply to that offense.

The court also found that in the instant case, that the parties attempted, by their plea agreements under the informations, to bargain away the application of the Sentencing Reform Act and Guidelines. The court also expressed its concern that no record had been made in this case for the dismissal of HCR 89–87, although charges originally brought under this indictment were to be dismissed as a part of the plea agreements.

Following the issuing of this ruling by the court, the government, by the assistant United States attorney, moved for the court's reconsideration of its order of July 20, 1990. In support of his motion for reconsideration, the assistant United States attorney stated in open court, on the record, that defendants, James Kender, Nestor Reyes, Frank Smith, and Linda Hinkle, had all been "over-charged" by the indictment in HCR 89–87, and that the charges contained in that indictment exaggerated and did not adequately reflect the level of complicity of these four (4) defendants in the "balloon people" conspiracy. The assistant United States attorney urged this court to reconsider its rejection of the plea agreements for these four (4) defendants, and stated his firm position that the charges contained in the new informations most adequately and truthfully reflected the level of criminal activity of these defendants in connection with the "balloon people" conspiracy.

Based on this statement by the assistant United States attorney, the court found that there now existed a sufficient basis in the record for the dismissal of the charges pending against these defendants in HCR 89–87, vacated its ruling rejecting the plea agreement for defendant, Reyes, and accepted his plea agreement. The court found that the assistant United States at-

torney had stated a sufficient basis for the dismissal of charges in HCR 89-87 for defendants, Smith and Kender, accepted their plea agreements and sentenced them accordingly. With respect to the plea agreement still pending subject to the court's discretion for defendant, Nicholas Padilla, the assistant United States attorney stated that, in the event the plea agreement was rejected, it was his position. that the government would move to dismiss the charges pending in HCR 89-87 with respect to defendant, Padilla, irrespective of whether the court accepted or rejected the plea agreement. The assistant United States attorney indicated that this dismissal might be based on concepts of double jeopardy.

On the following day, in preparation for issuing its rulings with respect to the remaining plea agreements still held under advisement, the court orally inquired of the assistant United States attorney whether it was still his intention to move for the dismissal of the charges pending in HCR 89-87. At this point, the assistant United States attorney stated in open court that he would not make his position on that issue known on any case. When the court reminded the assistant United States attorney that he had, during the previous day's proceedings, made a statement to that effect in open court, the assistant United States attorney denied ever having made that statement and then qualified his denial by stating that, if in fact he had made that statement, he made that statement as an attorney rendering an opinion and not in his official capacity as an assistant United States attorney in this district.

At this point the court called a recess and ordered the court reporter to locate the portion of the record in the previous day's proceedings which reflected the interchange between the court and the assistant United States attorney regarding the dismissal of HCR 89-87. Having done so, the court reporter read back into the record in open court the colloquy between the court and the assistant United States attorney on that issue. At this point, the acting United States attorney requested an *in camera* discussion with the court about a strictly procedural matter which did not go to the merits in any of the pending cases. Following the *in camera* discussion, the acting United States attorney requested a 24-hour continuance for the purpose of filing a response to the court's memorandum opinion and order of July 20, 1990, and a motion to reconsider that order which, in the acting United States attorney's opinion, would resolve the "log jam" that had developed in this case. Based upon this assertion, the court granted a 24-hour continuance and, based on the government's motion to continue the hearings, continued all further proceedings in this matter to August 2, 1990.

On July 26, 1990, the acting United States attorney filed the government's response to and motion to reconsider the court's memorandum opinion and order of July 20, 1990. The first seven pages of the government's motion contain a somewhat lengthy discourse on the acting United States attorney's opinion and position regarding this court's rulings in the "balloon people" case. The acting United States attorney adopts a tone more suited to that of a judge of a court of appeals than that of a movant respectfully seeking reconsideration of a court order. At one point, the acting United States attorney goes so far as to express his opinion that the court's ruling, which he refers to as the court's "point of view," is "misplaced;" at another point, the acting United States attorney refers to this court's ruling as a "claim" which he denounces as "without merit".

The acting United States attorney then reaffirms the position taken by the assistant United States attorney in open court that the government has "avoided the Guidelines, but has not circumvented those Guidelines[,]" in order to make clear his position that avoiding the Guidelines should be tolerated and condoned by the court as distinct from circumventing the Guidelines. The acting United States attorney then asserts that the actions taken by the United States attorney's office in this case do not "even approach an illegal circumvention of the Sentencing Guidelines." Pages eight through thirteen (8-13) of the acting United States attorney's motion contain reasons

for the dismissal of the charges in HCR 89–87 as a condition of the plea agreements entered into under the superseding informations. It is based upon these reasons, and not upon the Acting United States attorney's often irrelevant discussion of the historical tradition of prosecutorial discretion in bringing charges, that the court bases its reconsideration of its rejection of the plea agreements in this case.

DISCUSSION

It is evident throughout the acting United States attorney's discourse on "separation of powers" and "prosecutive decisions" that he fails to appreciate the obvious distinction between the commencement of a criminal case by the filing of charges and the termination of a criminal case by moving to dismiss those charges. After what he refers to as "a careful reading of the court's July 20 order and upon consideration of the court's decisions and comments relative to in-court proceedings," the acting United States attorney takes issue with what he interprets as this court's desire to learn the "strategies behind the government's prosecutive decisions," which he argues "threatens an unwarranted intrusion into the internal functioning of the executive branch."

The acting United States attorney goes on to denounce as "misplaced" this court's insistence that a record be made in a case in which charges originally brought are dropped, simply because this court cited only the memorandum from Attorney General Richard Thornburgh to all federal prosecutors dated March 13, 1989, which was printed in *Federal Sentencing Reporter*, Vol. 1, No. 9 (Vera Institute of Justice, All Union Press, April 1989), at pp. 421–423, in support of its ruling. The acting United States attorney, in further denouncing this ruling, states "[a]ny claim that General Thornburgh's memorandum provides a legal basis for the proposition that federal prosecutors are required to advise the court, or a defendant, for that matter, of what goes into the prosecutive decision is without merit."

First, the acting United States attorney has not read the memorandum opinion and

order of this court dated July 20, 1990 as carefully as he claims. By that order, this court ruled that there should be a record in a case in which charges which are originally brought are dropped, and found that, as of July 20, 1990, and despite repeated invitations by this court to do so, the government flatly refused to make a record in this case as to why the charges in HCR 89–87 were to be dropped or dismissed. The government sought instead, to rest on its own conclusory statement that the decision was based on sound reasons not suited to judicial review. (See government's Memorandum in Support of Plea Agreement, filed June 27, 1990, p. 5.) Rather than request information as to "prosecutive decisions," whatever that vague characterization is intended to denote, this court has simply requested that the government make a record for the dismissal of charges.

Secondly, the acting United States attorney failed to read Attorney General Thornburgh's memorandum with any attention to detail. It is true that in ending his discussion on the dismissal of readily provable charges, the Attorney General states that "[i]t is important, therefore, that federal prosecutors keep records justifying their decisions not to go forward with readily provable offenses." Thornburgh Memorandum, *Federal Sentencing Reporter*, Vol. 1, No. 9 (Vera Institute of Justice, All Union Press, April 1989), p. 422. However, this statement was made in reference to the likelihood that the Department of Justice and the Sentencing Commission would monitor cases in which charges are dropped. *Id.* With respect to plea bargaining and, more specifically, charge bargaining, the Attorney General stated "[t]here should be a record, however, in a case in which charges originally brought are dropped." *Id.* at 421. The acting United States attorney's position that "record" refers only to internal record keeping finds no support in the Attorney General's memorandum regarding plea bargaining, and the acting United States attorney has failed to cite precedent of any sort to support his narrow interpretation of this term.

The acting United States attorney's position that the statement by the Attorney General regarding the requirement that a record be made when dismissing charges is insufficient legal precedent for this court's ruling is likewise meritless. The requirement that the government make a record in all cases in which charges originally brought are dismissed is found in Rule 48(a) of the Federal Rules of Criminal Procedure, which provides that:

The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

The Attorney General's omission of a cite following his statement that the making of a record is required renders his directive to the federal prosecutors of this country no less viable; nor does the court's failure to cite Rule 48(a) make its order that a record is required when charges originally brought by an indictment are dismissed any less binding on the acting United States attorney or any member of his staff. This court looks with displeasure on this attempt by the acting United States attorney to place this court in the position of an advocate, obligated to convince the government of the merit of its rulings.

The Rule 48(a) requirement that the government make a record in all cases where charges in an indictment are to be dismissed, whether in connection with a plea agreement or otherwise, threatens no more of an unwarranted intrusion into the internal functioning of the executive branch than that which was contemplated and deemed necessary by Congress and the Supreme Court in enacting Rule 48(a). Prior to the adoption of Rule 48(a), more than thirty (30) states had modified common law to give the court a responsible role in the dismissal of a pending criminal proceeding by requiring an "order", or "leave", or "consent" of court. *United States v. Cowan,* 524 F.2d 504, 509–510 (5th Cir.1975), *cert. denied sub nom.* *United States v. Woodruff,* 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976).

The Supreme Court, prior to the adoption of the Rule, commissioned a committee to create and submit a number of drafts of a proposed rule "for the criticism of the bench and bar." *Id.* (citing Orfield, *Criminal Procedure Under the Federal Rules § 48:17* (1967), pp. 336–337). In response to a draft which provided that the "Attorney General or the United States attorney may file a dismissal of the indictment or information with the statement of the reasons therefor and the prosecution shall thereupon terminate[,]" the Court rejected the draft, finding that it gave the Attorney General or the United States Attorney "unqualified authority to *nolle prosse* a case without consent of the court." *Id.* (citing *Young v. United States,* 315 U.S. 257–259, 62 S.Ct. 510 [511–12], 86 L.Ed.2d 832 (1942); Orfield, *Criminal Procedure Under the Federal Rules § 48:17,* at p. 338.) Ultimately, the Court deleted the phrase "with a statement of the reasons therefor," and inserted in its place the phrase "by leave of court." *Id.* (citing Orfield, at § 48:19, p. 343). Congress adopted Rule 48(a) in this form, and the Federal Rules of Criminal Procedure, 18 U.S.C., became effective on March 21, 1946. *Id.* 62 S.Ct. at 510–511; *United States v. Shanahan,* 168 F.Supp. 225, 227 (S.D.Ind.1958).

In construing Rule 48(a), the courts have held that the requirement that "leave of court" be obtained to dismiss an indictment necessarily contemplates the submission of reasons for the court's consideration. As Judge Steckler held, in response to an application for the dismissal of charges contained in an indictment which made no disclosure of the facts upon which the dismissal was to be based:

Surely, if the court has discretion in the premises it is entitled to the factual information upon which the final departmental recommendation is based. If the Department deems it unwise to disclose any weaknesses in its case before the defendant has pleaded guilty, it can always submit its information in writing and request that the disclosure be sealed at least until sentence has been imposed.

*United States v. Shanahan,* 168 F.Supp. at 229 (quoting *United States v. Doe,* 101 F.Supp. 609, 611 (D.Conn.1951)). Recommendations by the prosecutor that charges be dismissed are not conclusive upon the court, otherwise there would be no purpose to Rule 48(a), which requires leave of court for the dismissal of an indictment. *Cowan,* 524 F.2d at 511 (citing *United States v. Greater Blouse, Skirt & Neckwear Con. Ass'n.,* 228 F.Supp. 483, 486 (S.D.N.Y. 1964)); *Shanahan,* 168 F.Supp. at 228.

 Any suggestion that the district court simply "rubber stamp" a motion to dismiss an indictment, whether as a condition of a plea agreement or otherwise, simply ignores the Supreme Court's inclusion in Rule 48(a) of the requirement that indictments be dismissed by leave of court. *United States v. N.V. Nederlandsche Combinatie, etc.,* 428 F.Supp. 114, *on reconsideration,* 75 F.R.D. 473 (1977); *United States v. Bettinger Corp.,* 54 F.R.D. 40 (1971) (citing *United States v. Greater Blouse, Skirt & Neckwear Con. Ass'n.,* 228 F.Supp. 483, 486 (S.D.N.Y.1964); *United States v. Shanahan,* 168 F.Supp. at 228; *United States v. Doe,* 101 F.Supp. at 611). In determining whether there is a sound basis for the dismissal of an indictment,

> more than a mere ministerial administrative act is involved; a judicial determination is sought, and the court may grant or withhold its sanction as the circumstances may require. The determination required is a judicial determination in which the court is not constrained by the desires or recommendations of the prosecuting authority.

*United States v. Shanahan,* 168 F.Supp. at 228, n. 6 (quoting *United States v. Krakowitz,* 52 F.Supp. 774, 784 (S.D.Ohio 1943)).

In this case, the government has failed to carry its "separation of powers" argument to the next logical step. Equally intrinsic to our system of government is a delicate system of "checks and balances." Indeed, Rule 48(a) was devised to promote a balance of power and to create a check on the previously unbridled power of the prosecutor to dismiss charges at will.

"To prevent the abuse of power, it is necessary that by the very disposition of things, power should be a check to power" ... [thus] the framers wove a web of checks and balances designed to prevent abuse of power and were too sophisticated to believe that the three branches of government were absolutely separate, airtight departments. *United States v. Cox,* 342 F.2d 167, 190 (5th Cir.1965). From this, it seems altogether proper to say the phrase "by leave of court" in Rule 48(a) was intended to modify and condition the absolute power of the executive, consistently with the framers' concept of separation of powers, by erecting a check on the abuse of executive prerogatives. But this is not to say that the rule was intended to confer on the judiciary the power and authority to usurp or interfere with the good faith exercise of the executive power to take care that the laws are faithfully executed. The rule was not promulgated to shift absolute power from the executive to the judicial branch. Rather it was intended as a power to check power.

*Cowan,* 524 F.2d at 513. Clearly, the fact that an indictment was returned by a grand jury removes the decision as to whether the prosecution of those charges shall terminate from the sole and exclusive province of the executive, whether incident to a plea agreement or otherwise. *United States v. Nederlandsche Combinatie, etc.,* 428 F.Supp. at 114, 75 F.R.D. at 475. See also *Shanahan,* 168 F.Supp. at 229; *Doe,* 101 F.Supp. at 611; *Bettinger,* 54 F.R.D. at 41.

With respect to the requirement that a record must be made in all cases in which charges originally brought are dismissed, the acting United States attorney's argument that this requirement creates no legally enforceable rights for a defendant is equally without merit. The primary purpose of the Rule 48(a) requirement that leave of court be obtained before dismissing charges "is [the] protection of a defendant's rights ... 'to prevent harassment of a defendant by charging, dismissing, and re-charging without placing a defendant in jeopardy'." *United States v. Salinas,* 693 F.2d 348, 351 (5th Cir.1982) (quoting *Unit-*

ed States v. Cox, 342 F.2d 167, 171 (5th Cir.), *cert. denied* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965)). *Accord United States v. Olson*, 846 F.2d 1103, 1113 (7th Cir.1988). A secondary purpose of the Rule is the protection of the public interest inherent in all criminal proceedings. "[T]he history of ... Rule [48(a)] belies the notion that its only scope and purpose is the protection of the defendant.... [rather, it is] manifestly clear that the Supreme Court intended to clothe the federal courts with the discretion broad enough to protect the public interest in the fair administration of criminal justice." *In re Washington*, 544 F.2d 203, 209 (5th Cir.1976) (citing *Cowan*, 524 F.2d at 512).

 While "the executive remains the *absolute judge of whether a prosecution* should be initiated and the first and presumptively the best judge of a pending prosecution should be terminated [,]" that presumption may be rebutted by a prosecutor who acts in bad faith and contravenes the public interest through a motion to dismiss an indictment. *In re Washington*, 544 F.2d at 209 (quoting *Cowan*, 524 F.2d at 513.) Additionally, leave of court to dismiss an indictment may be withheld where the court is "left without information which in [the court's] judgment justifies a nullification of the indictment by a grand jury acting, so far as it appears, in accordance with ... usual judicial instructions ..." *United States v. Shanahan*, 168 F.Supp. at 229 (quoting *Doe*, 101 F.Supp. at 611.) "Ultimately, it is for the court in either granting or denying leave to file the dismissal, to agree or disagree with the conclusion of the Attorney General or the United States Attorney that the dismissal is 'in the interest of justice.'" *Shanahan*, 168 F.Supp. at 229.

The application of Rule 48(a) to the circumstances in this case is not obviated by the fact that the United States attorney has not moved for dismissal of HCR 89–87 by filing a motion pursuant to Rule 48(a), but rather has sought that end by entering into plea agreements which involve separate informations and call for the dismissal of HCR 89–87. Rule 48(a) was applied in

the case of *United States v. Cowan*, 524 F.2d 504 (5th Cir.1975), *cert. denied sub nom. United States v. Woodruff*, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976). In *Cowan*, the United States attorney sought to dismiss charges originally returned by a grand jury in the form of an indictment by filing an information to which the defendant had agreed to plead guilty. The United States attorney reached this agreement with this defendant in an effort to obtain the defendant's cooperation in the Watergate investigation; in exchange for the defendant's plea of guilty to the information, which contained a misdemeanor charge, the United States attorney agreed that the charges against the defendant as returned by a federal grand jury in the form of an indictment would be dismissed. 524 F.2d at 509.

In *Cowan*, the United States District Court for the Northern District of Texas, at San Angelo, denied the motion, and, upon the formal declination of the government to proceed with the prosecution, appointed a special prosecutor. *Id.* On appeal by the government, the court of appeals held that, while the trial court did have the discretion to refuse to permit the dismissal of the prosecution, the bounds of the district court's discretion had been exceeded where the government had demonstrated specific good faith reasons which were sufficiently articulated in the motion to dismiss. 524 F.2d at 514.

 The acting United States attorney's discussion of "the *Petite* policy" is irrelevant to the facts of this case. Additionally, his reliance upon the United States Court of Appeals' construction of this policy, to support an argument that a record is not required in all cases in which charges are to be dropped, is misplaced. "The '*Petite*' policy is an internal guideline for the exercise of prosecutorial discretion[,]" in successive federal criminal prosecutions. *United States v. Mitchell*, 778 F.2d 1271, 1276 (7th Cir.1985) (citations omitted.) This court has ruled that a record must be made where a plea agreement calls for the dismissal of an indictment, and this ruling is founded on a construction of Rule 48(a).

In that Rule 48(a) does not provide for discretion on the part of the prosecutor, a discourse in prosecutorial discretion and whether or not internal policy directives create substantive rights for defendants is irrelevant.

██ Although he erroneously deems it an exercise of his discretion to comply with the Memorandum Opinion and Order of this court issued July 20, 1990, the acting United States attorney has in fact supplied this court with numerous substantive good faith reasons for the dismissal of the charges in HCR 89–87, as a condition of the accepting of the plea agreements entered into between the government and several of the defendants in this case. Among those reasons, the acting United States attorney cites the impact upon prosecutorial resources of a trial in this case. A trial would arguably involve sixteen defendants and require between six to eight weeks to complete. The acting United States attorney also makes note of the fact that the attention that this trial would require by one or more of the assistant United States attorneys on his staff would increase the average case load per attorney to 88.5.

The government notes the extraordinary cost of conducting a trial in a case this size. The "balloon people" case would involve producing over 120 witnesses, some from as far away as New Jersey and California, as well as several United States Drug Enforcement Administration Agents who, while engaged in trial, would be unavailable to pursue other, unrelated investigations. The government also notes the potential impact of public safety given the fact that it has been judicially determined that several of the defendants in the "balloon people" case are dangerous. The government deems it advisable and appropriate to control through plea agreements the number of these defendants who would be in a position to congregate in a public place at any given time.

██ The government also discusses propriety of the Guidelines in its assertion of reasons justifying the dismissal of the charges in HCR 89–87. This court finds that the reasons asserted by the govern-ment along this line are irrelevant and improper. The government cites a case from the United States District Court for the Southern District of New York in which the court held the application of the Sentencing Guidelines to a conspiracy where the bulk of criminal activity took place before the effective date of the Guidelines inappropriate. *United States v. Davis*, 718 F.Supp. 8 (S.D.N.Y.1989). In this district, a conspirator is liable for the acts of his co-conspirators as long as he is a member of the conspiracy. *United States v. Andrus*, 775 F.2d 825, 850 (7th Cir.1985). If the conspiracy of which a defendant is found to be a member existed after the Guidelines' November 1, 1987 effective date, the Sentencing Guidelines apply to that offense. *United States v. Sergio*, 734 F.Supp. 842, 844 (N.D.Ind.1990). Furthermore, the Guidelines have been found to be a constitutional act of Congress and must be followed whether the courts or prosecutors like or agree with the reduction of their discretion in the disposition of cases under the Guidelines. *United States v. Thomas*, 906 F.2d 323, 329 (7th Cir.1990). Therefore, the propriety of the Guidelines can hardly be argued as an effective basis for the dismissal of charges.

The government does argue, however, that, upon further investigation and notwithstanding its previous statements regarding those defendants who were overcharged in HCR 89–87, that eighty percent (80%) of the criminal activity in the "balloon people" conspiracy occurred prior to the effective date of the Guidelines. This assertion finds ample basis in the record, as the conspiracy spans 1982 through 1989, even though 13 of the fourteen counts allege acts which occurred in 1988 and 1989. As it is the responsibility of this court to make a judicial determination as to the sufficiency of the basis for the dismissal of charges under Rule 48(a) of the Federal Rules of Criminal Procedure, this court now finds that the United States attorney's office has made an adequate record for the dismissal of the charges in HCR 89–87, and therefore will accept the plea agreements.

Based on the foregoing, the court now ACCEPTS the tendered plea agreements of defendants, Linda Hinkle, Julio Abreu and Nicholas Padilla. The court will ALSO ACCEPT the tendered plea agreements of defendants, Carlos Arroyo, Theodore Gonzales, Richard Melendez, John Reyna, Hardy Rivera, and Damaso Vasquez.

█ This court is not a rubber stamp for the actions of the United States attorney for the Northern District of Indiana, nor for any other party who seeks access to its forum. While the United States attorney is entitled to the presumption that its motions to dismiss are grounded in good faith, in circumstances where, as here, the court doubts the applicability of that presumption to the dismissal of an indictment, the United States attorney bears the burden of persuading the court that the reasons for the proposed dismissal are substantial. *Cowan*, 524 F.2d at 511 (citing *Greater Blouse, Skirt & Neckwear*, 228 F.Supp. at 486). Rule 48(a) contemplates public exposure of the reasons for the abandonment of indictment, information or complaint in order to prevent "abuse" of the uncontrolled power of dismissal previously enjoyed by prosecutors. *Id.* To gain the court's favorable discretion, the prosecution must convince the court that the reasons for the proposed dismissal are substantial. *Id.* While the United States attorney and this court share the burden of protecting the public interest in the even-handed administration of criminal justice, where the executive and judicial branches of government assert opposing powers under Rule 48(a), it becomes "the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 1 Cranch. 137, 2 L.Ed. 60 (1803) (Marshall, C.J.). See also, *Cowan*, 524 F.2d at 509 (quoting *United States v. Nixon*, 418 U.S. 683, 703, 94 S.Ct. 3090, 3105, 41 L.Ed.2d 1039 (1974)).

It is particularly disturbing to this court that the acting United States attorney fails to note Rule 48(a) or the body of case law construing this Rule and chose instead to proceed upon the assertion that it is within his discretion to pick and choose which of the Federal Rules of Criminal Procedure and which rulings of this court he and his staff will comply with. While it is within this court's discretion to accept or reject a plea agreement, and it is within this court's discretion to accept or reject the government's motion to dismiss an indictment, such discretion is subject to appellate review. *Cowan*, 524 F.2d at 513. The proper procedure when any attorney does not agree with a ruling of this court, or feels that such ruling is not well-grounded in fact or law, is to file a well-grounded motion for reconsideration of that order by this court, or to take the matter up with the United States Court of Appeals for the Seventh Circuit. It is improper to demonstrate an egregious lack of cooperation and lack of respect for any ruling of this court. While the acting United States attorney is the chief executive officer in charge of law enforcement for this district, he is nonetheless a member of the bar and, as such, is required to adhere to the Federal Rules of Criminal Procedure and to the orders of this court. It is also expected that he will encourage his staff to do the same. Compliance with the rulings of this court is required of the acting United States attorney and each member of his staff to the same degree as it is expected of any and all other attorneys who practice before this court. To say that the requisite level of compliance has not been forthcoming in this case is indeed an understatement.